## UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF COLUMBIA
Civil Division

_____ )
**EASYTRACKS CAPITAL, LLC,** a District )
of Columbia Limited Liability Corporation )
3259 Fort Lincoln Drive, N.E. )
Washington, D.C. 20018, )
                      )
       Plaintiff, )
                      )
       v. )      Case Number:
                      )
**ROBERT FORD**, Individually )
99 N Post Oak Lane #1205 )
Houston, Texas 77024 )
                      )
       and, )
                      )
**GRYPHON TRADE AND FINANCE, LLC**, )
  An unincorporated company formerly doing )
    business in the State of Texas, )
**ROBERT FORD**, Managing Partner )
510 Bering, Suite 300 )
Houston, Texas 77057, )
                      )
       Defendants. )
                      )
_____ )

## COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND PROSPECTIVE ADVANTAGE, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, AND FRAUD

NOW COMES the Plaintiff, **EASYTRACKS  CAPITAL, LLC**, by and through its

counsel, PCT LAW GROUP, LLC, and for its Complaint states as follows:

## JURISDICTION

1.   This is civil action where the matter in controversy, exclusive of interest, exceeds $25,000.00.  Jurisdiction of this court is founded on diversity and 28 U.S.C. §§ 1332 (2013).

## VENUE

2.   Venue is proper in this Court because the contract at issue was negotiated, entered in, and executed in District of Columbia.   The contract provides that the District of Columbia is the proper venue for any action arising out of the agreement.

3.   It is also proper for venue to lie in this Court because the Plaintiff, is a small business that is located in District of Columbia; and the loss of business profits, reputation, and market presence, in addition to other wrongful actions took place therein.

## PARTIES

4.   Plaintiff, EASYTRACKS CAPITAL, LLC. (hereinafter "ECL" ) is, and at all times, mentioned in this Complaint, a citizen of the District of Columbia.  ECL maintains its principal place of business in the District of Columbia.  It is registered as a local business enterprise in good standing.

5.   Plaintiff, ECL is in the business of identifying, investing, and managing development projects which involve buying and selling undervalued and underperforming companies.  ECL develops alliances and partnership agreements with investors, consultants and other contractors to assist in the execution of these profitable transactions.

6.   Defendant Robert Ford (hereinafter "Ford") is the Owner and Managing Member of Defendant GRYPHON TRADE AND FINANCE, LLC. (hereinafter "GTF").  As the principal of GTF, he was the individual responsible for the transactions at issue in this Complaint.

2

7.   Upon information and belief, GTF was purportedly properly licensed, certified and registered to do business as a limited liability corporation in the State of Texas.

8.   GTF, was a business located in the State of Texas, that provided funding and/or equity capital for businesses involved in the acquisition, purchase or sale of undervalued or underperforming companies. At all times mentioned in this Complaint, Defendant Ford entered into agreements with the Plaintiff, as an individual and as a principal of GTF.

9.   Upon information and belief, Defendant Ford dissolved GTF in 2012 but continues to engage in the same business through another sole owned business.

10.   The amount in this controversy between Plaintiff and Defendants exceeds, exclusive of interests and costs, the sum of $75,000.00.

I.      _Business Transaction No. 1_.

11.   On or about February 23, 2011, ECL entered into two agreements with GTF and Ford to secure financing for two development projects in Africa.   The agreements set out two proposed transactions whereby Defendant Ford identified and secured capital to finance two business ventures for Plaintiff ECL to acquire and develop.

12.   GTF agreed to raise approximately $25 Million Dollars for ECL and investors to purchase the Grand Bassa Logging Company; a Liberian company.  The plan contemplated ECL would operate and manage the logging concern.  GTF and its investors would repay the investment from the profits of the business.

13.   Plaintiff  ECL advanced money to Defendant Ford to conduct his due diligence activities related to the purchase.   ECL advanced approximately $120,000.00; the combination of a bridge loan, and costs and a portion of the expenses.

14.   The money advanced by ECL as a Bridge Loan to Defendants GTF and Ford, was paid immediately upon execution of the agreement in the amount of $62,500.00, pursuant to GTF's Invoice No. 102319, dated February 28, 2011.  Attached as Exhibit 1, *GTF's Invoice to ECL*.

15.   Defendants Ford and  GTF never obtained funding for the Grand Bassa purchase, and ECL never acquired the Liberian concern.   ECL was not repaid the money it advanced to Defendants.

II.      *Business Transaction No. 2*

16.   Two months later, on or about April 12,  2011,  Plaintiff  ECL entered into a second transaction with the Defendants GTF and Ford to raise approximately $6.7 Million Dollars. ECL intended to purchase Great George Nigeria Ltd., Quarry Company under the same terms as the earlier transaction.   GTF and its investors would repay the investment over time from profits earned through management of the business.

17.   Plaintiff  ECL gave Defendants Ford and GTF an advance of approximately $22,550.00, including other related costs and expenses.

18.   Defendants Ford and GTF never obtained funding for the Great George purchase and ECL never acquired the Nigerian concern.  ECL was repaid the initial costs of $16,750.00, but was not repaid the other expenses and costs.

III.      *The Promissory Note*.

19.   The Plaintiff  performed its part of the conditions, covenants and promises to acquire the new businesses pursuant to the Liberian and Nigerian agreements.   Chief among those conditions was the Plaintiff's agreement to advance funds to Defendants in excess of $136,400.00.

4

20.   Plaintiff ECL requested re-payment of the advance monies once it became clear that Defendants Ford and GTF were unsuccessful in their efforts to obtain funding.  A demand was made to Defendants for repayment but Defendants failed to repay the loans.

21.   As a result of the entire misadventure,  the Defendants agreed to repay the Plaintiff the "advance money" and related costs.  The parties agreed to a compromised amount – $85,500.00.

22.   On or about November 2, 2012, a Promissory Note ("Note") upon which this action is based was signed by the parties to be performed in the city of Washington in the District of Columbia.   Attached as Exhibit 2; *Promissory Note.*

23.   The November 2, 2012 Note is governed by the laws in the District of Columbia.

24.   The Note provided for a schedule of payments and two due dates; November 14, 2012 and January 7, 2013.  *Note*; para 4.

25.   At the time the Note was executed, Defendant Ford issued three postdated checks to ECL set out in the Note to ensure timely payments.

26.   Plaintiff ECL was unable to cash all of the postdated checks.  Two checks remain unpaid today.

27.   The Note also provided that, Plaintiff ECL could:  (a) collect interest on the debt; (b) recover reasonable attorneys' fees as a prevailing party to any dispute arising under the contract; and, (c) recover the costs of collection efforts, if a prevailing party, in case of non-payment. *Note*, paras. 3, 4, 7.

28.   Plaintiff began collection efforts in February 2013.  Plaintiff sent demand letters to Defendants on April 15, 2013, and May 13, 2013, seeking repayment.   Despite numerous

email exchanges, promises and representations, the debt remains unpaid.  Defendants continue to fail to pay or refuse to repay the sum owed to Plaintiff.

## COUNT I
## BREACH OF CONTRACT

29.     That the Plaintiff incorporate herein by reference its allegations in paragraph 1 through 28, word for word, as if same were entirely re-plead.

30.     On or about November 10, 2013, the parties negotiated and signed a Promissory Note to govern repayment of a debt; a copy of which is attached to this complaint.

31.     That the Plaintiff, acted in good faith when it negotiated and agreed to the terms of the Note with the expectation that Defendants would repay the debt.

32.     That the Defendants' breached its agreement under the Note to make all the payments required under the Promissory Note.

## COUNT II
## INTENTIONAL INTERFERENCE WITH
## CONTRACTUAL RELATIONS AND
## PROSPECTIVE ADVANTAGE

33.     That the Plaintiff incorporates herein by reference its allegations in paragraph 1 through 32, word for word, as if same were entirely re-plead.

34.     That the parties entered into three agreements.   Two agreements required Defendants to assist the Plaintiff with financing for purchase agreements, and, the Plaintiff in turn agreed to finance the Defendants' due diligence and preliminary review stage.   The

Defendants were aware that the Plaintiff relied upon their best efforts to obtain the money and investment funds needed to complete the transactions.

35.    ECT intended to acquire new businesses, establish a footprint in the business markets in which the new companies were based and receive profits from a successful investment.  Defendants were aware of ECT's intentions and represented that they could assist ECT in achieving its goals.

36.    ECT did not provide any documents, records or other materials which described, explained or chronicled the actions taken by Defendants to meet its financing goals under the agreement.  Moreover, Defendants did not identify any individuals,  business affiliates,  or government contacts involved in the financing process; nor did they produce, document or transmit any notes or referenced any fact showing the procedure they employed or portraying the reasons for the lack of progress in fundraising.  Notwithstanding Defendants' knowledge that the Plaintiff had a relationship with the proposed business partners leading up to the sale, their failure to finance the transactions, harmed and disrupted Plaintiff's business and corrupted its ability to maintain those connections and relationships.

37.    Moreover, Defendants' failure to repay the Plaintiff under the Note is willful and intentional; thereby depriving Plaintiff of money needed to continue its business and/or repair the business relationships at issue in the proposed transactions.

38.    Defendants were aware that Plaintiff's failure to complete either development project would adversely impact its ability to obtain new business opportunities from other third parties in the region. The loss of business partners (actual and potential), diminished business

reputation, and loss of the other similar prospective business opportunities are obvious results of the Defendants' conduct.

39.     As a result of Defendants' action, Plaintiff should be entitled to recover damages.


COUNT III
BREACH OF COVENANT OF GOOD FAITH
AND FAIR DEALING

40.     That the Plaintiff incorporates herein by reference its allegations in paragraph 1 through 39, word for word, as if same were entirely re-plead.

41.     That the Plaintiff contracted with Defendants to use their best efforts to obtain financing for the development of two projects, but they failed to do so. Further, the parties entered into the Note to repay Plaintiff money loss in the failed transactions but willfully failed to pay.

42.     That each agreement contained the implied covenant to act in good faith and fair dealings in the performance of one's obligations under the agreement. In contrast to those obligations, the Defendants' failure to act in good faith was manifested not only by the absence of financing but the lack of any documentation, records, or information related to leads, data, financial institutions, investors, business relationships or other information which document, describe or explain the efforts taken to obtain or secure funding.  It appears that Defendant Ford did not engage in any activity which he could demonstrate was taken on Plaintiff's behalf in a manner consistent with general business practices.  The absence of any business record of activities taken on its behalf is evidence of that fact.

43.     Additionally, Defendants agreed to repay the Plaintiff by executing a promissory note in which they have no intention to honor.  Defendants willfully acted in bad faith by issuing checks which also remain unpaid.


COUNT IV
<u>FRAUD</u>

44.     That the Plaintiff incorporates herein by reference its allegations in paragraph 1 through 43, word for word, as if same were entirely re-plead.

45.     That the Defendants made certain material representations to the Plaintiff regarding the two development projects, including but not limited to the following:

a.    That the Plaintiff would receive funding to purchase the logging company and the quarry.

b.    That the Defendants had the capacity and the ability to fund the projects and assist Plaintiff in its efforts to build relationships in the region.

c.    That Defendant Ford owned and managed a company in good standing with a reputable business reputation within the local and international trade communities.

46.     That at the time the Defendant Ford made said representations the Defendant Ford intended that the Plaintiff rely upon same.

47.     That at the time the Defendant Ford made said representations, the Defendant Ford knew or should have known same were false or the Defendant Ford made misrepresentations with a reckless disregard as to the truth or falsity thereof.

48.     That the Plaintiff relied upon said representations and entered into the contracts, and provided advance monies to Defendants for seed money, costs and expenses related to travel and other due diligence efforts.

49.     That as a direct and proximate result of the fraudulent misrepresentations, the Plaintiff was deprived of its funds, and Plaintiff have been injured by loss of use of the funds, loss of reputation, and an inability to compete in the market without the use of said funds. Plaintiff seeks compensatory damages in the amount of $136,400.00 for said acts and has sustained damages in excess of $136,400.00.

**WHEREFORE PLAINTIFF PRAYS** for judgment against Defendants, and each of them as follows:

1. Award judgment to the Plaintiff and against the Defendants.
2. Award the sum of $68,750 for breach of contract and the value of its performance.
3. Interest in the amount of legal rate from the date of the breach.
4. General damages in the amount of $136,400 for Defendants' fraud.
5. For reasonable attorneys' fees and costs incurred herein.
6. Grant any other relief as the court may deem just and proper

## JURY DEMAND

Plaintiff demands a jury trial on all issues so properly triable.

Date: November 7, 2013

Respectfully submitted,

*Lisa A. Bell*
_____

Lisa A. Bell #424685
Attorney for *EASYTRACKS CAPITAL, LLC*
PCT Law Group, PLLC
1575 Eye Street NW
Suite 300
Washington, DC 20005
(202) 683-8929
lbell@pctlg.com